**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                        :
CARLO PEDEMONTE BOGGIANO                 :
                                        :            Civil Action No.: 09-1558 (FLW)
                Plaintiff,               :
                                        :                    **Opinion**
        v.                               :
                                        :
ERIC HOLDER, et al.                      :
                                        :
                Defendant.               :
_____          :

**WOLFSON, United States District Judge:**

Presently before the Court is Defendants' (collectively, "the Government's") Motion to Dismiss Plaintiff's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for lack of subject matter jurisdiction. Having been denied a Certificate of Citizenship from the Department of Homeland Security, Plaintiff seeks review of that determination in this Court by way of declaratory judgment pursuant to 8 U.S.C. § 1503(a). For the following reasons, the Court concludes that it does not have subject matter jurisdiction to hear his claim.

1

I.      BACKGROUND

Plaintiff filed this suit seeking declaratory relief under 8 U.S.C. § 1503.[1]  This court must determine its jurisdiction, or lack thereof, at the outset.  "A federal court can only exercise that power granted to it by Article III of the Constitution and by the statutes enacted pursuant to Article III."  In re Orthopedic "Bone Screw" Products Liability Litigation, 132 F.3d 152, 155 (3d Cir. 1997).  As is appropriate on a motion to dismiss for lack of subject matter jurisdiction, the Court accepts as true all material allegations set forth in Plaintiff's Complaint.[2]  See Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 296 (3d Cir. 2003).

A.      *Facts and Procedural History*

Plaintiff was born in Peru in 1973.  His mother and father divorced in 1982, and custody was granted to his mother.[3]  Compl. at 2; Compl., Exh. A.  Plaintiff's mother has never resided in the United States, but has resided continuously in Peru.  Compl. at 2.  In 1984, Plaintiff's mother obtained an order from the Family Court of Callao, Peru documenting her grant of

---

[1]      In his Complaint, Plaintiff cites the federal question statute, 28 U.S.C. § 1331, as an alternate basis for jurisdiction.  Neither party, however, argued the applicability of the federal question statute here.  Case law suggests that it may not form the sole basis for jurisdiction.  Cf. Farag v. U.S. Citizen. and Immig. Svcs., 531 F.Supp.2d 602, 606-07 (S.D.N.Y. 2008) ("To invoke jurisdiction under this statute, [the] plaintiff must make a claim that arises from an applicable federal statute or constitutional provision . . . To the extent that [the plaintiff] may generally allege a violation of the Immigration and Naturalization Act, that would be insufficient because that statute does not itself create a cause of action or federally-protected right or interest in derivative asylum status.") (internal citation and quotation marks omitted).

[2]      There are no paragraph demarcations in Plaintiff's Complaint, hence the Court cannot cite to same.  The Court will, instead, cite to the Complaint's page numbers.

[3]      The divorce decree was entered by a New York court; however, Plaintiff alleges that both of his parents were residing in Peru at this time.  Compl. at 2.

permission to her son allowing him to travel to the United States along with his paternal grandmother.  Id.; Pl. Opp., Exh. D.  The order was silent as to whether Plaintiff's mother was permitting him to permanently reside in the United States with his father.[4]   Plaintiff immigrated to the United States that year, 1984, as a lawful permanent resident.  Compl. at 2.

While Plaintiff was still a minor, and living in the U.S., his father became a naturalized citizen in 1989.  Certificate of Naturalization, Compl., Exh. D.  On this basis, Plaintiff contends that he automatically became a U.S. citizen under the governing immigration laws at that time.[5]  Pl. Opp. Br. at 3.  Under former 8 U.S.C. § 1432, the statute in effect at the time of Plaintiff's father's naturalization, a minor child of a naturalized parent automatically becomes a citizen, provided the parent has legal custody of the child.  See Minasyan v. Gonzales, 401 F.3d 1069,

---

[4]      The order is titled "Authority to Travel" and provides simply that "[Plaintiff] is permitted to travel to the United States of America with his paternal grandmother . . . under the permission of his mother ...."  Pl. Opp., Exh. D.

[5]      "[D]erivative citizenship is determined at the time the critical events giving rise to the eligibility occurred."  Minasyan v. Gonzales, 401 F.3d 1069, 1075 (9th Cir. 2005).  See also INS Interp. § 320.1(a)(1) at 2-3 (explaining that where "the combination of elements [that] need to be completed during the validity of the statute which provided for derivative status by reason of such combination [so occurred] . . . derivation [is] complete and citizenship vest[s] upon the realization of the last essential element in a required combination").

1075 n.10 (9th Cir. 2005).[6]  Plaintiff acknowledges, however, that the divorce decree granted his mother legal custody of him in 1982.[7]

Having been convicted of a federal crime on July 6, 2007, the Department of Homeland Security instituted removal proceedings against Plaintiff in September of that year.  Compl. at 3.  He was then held in custody by Immigration and Customs Enforcement.  While his removal proceedings were pending, Plaintiff was advised by former counsel of his claim to derivative citizenship pursuant to 8 U.S.C. § 1432.  He then filed an application for a Certificate of Citizenship (Form N-600).  Id.  A Certificate of Citizenship documents derivative citizenship

---

[6]     Former 8 U.S.C. § 1432 provides that a child born outside of the United States of alien parents automatically becomes a citizen of the United States upon:

> . . . (3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
>
> (4) Such naturalization takes place while such child is unmarried and under the age of eighteen years; and
>
> (5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the . . . parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

8 U.S.C. §1432 (repealed 2000).

[7]     In this regard, Plaintiff submitted, along with his opposition brief, a 2008 notarized letter from his mother stating that she granted legal custody to his father in 1984.  This letter is discussed in more detail *infra*.

4

status based on citizen parentage.  See Department of Homeland Security, Application for Certificate of Citizenship at http://www.uscis.gov/portal/site/uscis (visited Jan. 15, 2010).

Plaintiff's application for a Certificate was denied on January 18, 2008.  See Denial of N-600 Application at Compl., Exh. G.  Shortly after the denial, on February 8, 2008, Plaintiff's mother executed a notarized letter stating that, in 1984, she "granted the WHOLE LEGAL CUSTODY of . . . CARLO FERNANDO PEDEMONTE BOGGIANO, to his father ...."  Pl. Opp., Exh. D.  While Plaintiff's mother's signature is notarized by the Ministry of Foreign Relations of Peru, the Ministry "legalized [her signature] WITHOUT JUDGING THE CONTENTS OF THE LETTER."  Id.  Plaintiff then filed a timely appeal of the Certificate denial to the Administrative Appeals Unit ("AAU") of the United States Citizenship and Immigration Services.

Meanwhile, the removal proceedings against Plaintiff proceeded.  Id.  As a defense to the removal proceedings, he argued before the Immigration Judge ("IJ") that he was a U.S. citizen and, therefore, "not subject to detention . . . nor subject to removal from the United States ...."  Compl. at 2.  Agreeing with Plaintiff, the Immigration Judge ordered that he be released from custody.  Id. at 4.[8]  The Department of Homeland Security did not appeal the Immigration Judge's decision.  Id.

On March 5, 2009, Plaintiff's appeal of the denial of his Certificate application was denied by the AAU.  Id.  The AAU denied his application because Plaintiff had not provided

---

[8]     While Plaintiff's Complaint lists this decision as an exhibit, no such decision is actually attached.

proof that his father obtained legal custody of him while he (Plaintiff) was still a minor.  See AAU Denial dated Mar. 5, 2009 at 3, Pl. Opp., Exh G.  Under the law in effect at the time, Plaintiff had to demonstrate that his naturalized parent obtained legal—not simply physical—custody in order to be entitled to derivative citizenship.  It does not appear from the AAU's decision that the February 8, 2008 letter from Plaintiff's mother was considered.  After Plaintiff's application was denied, he brought suit in this court, to challenge that denial.  He seeks to clarify the "legal limbo" created by the conflicting IJ and AAU decisions.

B.    *Certificates of Citizenship*

For the sake of clarity, I provide the following legal background relating to Certificates of Citizenship and citizenship-based claims.    A Certificate of Citizenship provides documentation for persons who obtain citizenship derivatively.   See 8 U.S.C. § 1452[9]; 7 C. Gordon, et al., Immigration Law & Proc. § 99.04 (Rev. ed. 1999) (hereinafter " —Immig. Law & Proc. § —").  It does not confer citizenship, but only "furnishes evidence of [one's] citizenship status previously vested." 7 Immigration Law & Proc. § 99.04 (citing 8 U.S.C. § 1453; INS Interp. 341.2(a)(8)).    Applying for a Certificate is optional—a person who has derived

---

[9]    A person who claims to have derived United States citizenship through the naturalization of a parent . . . may apply to the Attorney General for a certificate of citizenship. Upon proof to the satisfaction of the Attorney General that the applicant is a citizen . . . such individual shall be furnished by the Attorney General with a certificate of citizenship, but only if such individual is at the time within the United States.

8 U.S.C.A. § 1452.

citizenship is not obligated to apply for one.  Rather, in the event proof of citizenship is ever required, the person may furnish independent proof of his status.  See 7 IMMIG. LAW & PROC. § 99.04[2].

A party seeking a Certificate of Citizenship files a N-600 form with the U.S. Citizenship and Immigration Services ("USCIS") office.  See 8 C.F.R. § 341.1(a).  The application is reviewed by a district director of USCIS and then, if denied, may be appealed to the AAU.  Once the AAU renders a decision on the application, the denial is final.  8 C.F.R. § 103.5(a)(i)(ii).  Department of Homeland Security regulations further provide that:

> [a]fter an application for a Certificate of Citizenship has been denied and the appeal time has run, *a second application submitted by the same individual shall be rejected* and the applicant instructed to submit a motion for reopening or reconsideration in accordance with 8 CFR 103.5.

8 C.F.R. § 341.6 (emphasis added).    Motions to reopen must be based on new evidence, whereas motions to reconsider must be based on alleged errors of law.  Compare 8 C.F.R. § 103.5(a)(2) ("A motion to reopen must state the new facts to be provided in the reopened proceeding and be supported by affidavits or other documentary evidence.") with 8 C.F.R. § 103.5(a)(3) ("A motion to reconsider must . . . be supported by any pertinent precedent decisions to establish that the decision was based on an incorrect application of law or Service policy [and must be] . . . based on the evidence of record at the time of the initial decision.").  Motions to reopen are "plainly disfavored."    Johnson v. Attorney General of U.S., 235 Fed.Appx. 24, *10 (3d Cir. 2007) (quoting I.N.S. v. Abudu, 485 U.S. 94, 107, 108 (1988)).  Motions

to reopen or reconsider must be filed within thirty (30) days of the AAU decision, although this time limitation may be excused in certain circumstances.  See 8 C.F.R. § 103.5(a)(1)(i).

      C.     Effect of Immigration Judge's Ruling on Citizenship

Immigration Judges do not have the authority to judicially determine citizenship within the context of a removal proceeding.  An IJ may only reject the Government's proofs of alienage.  See Minasyan v. Gonzalez, 401 F.3d 1069, 1074 (9th Cir. 2005) ("An assertion of U.S. citizenship is . . . a denial of an essential jurisdiction fact in a deportation proceeding."); Murphy v. I.N.S., 54 F.3d 605, 608 (9th Cir. 1995) (holding that the Government must prove alienage by clear and convincing evidence before removal may be ordered) (citations omitted). Accordingly, an IJ's acceptance of a potential deportee's citizenship argument does not extend beyond the deportation proceeding in which that finding is made.

II.     JURISDICTION

      A.     Legal Standard for Jurisdictional Challenges

Challenges to subject matter jurisdiction are governed by Federal Rule of Civil Procedure 12(b)(1).  Rule 12(b)(1) permits a party to bring a motion to dismiss for want of subject matter jurisdiction.  See Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007).  In ruling on such a motion at the pleading stage, the Court must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party. See Storino, 322 F.3d at 296.

      B.     Jurisdiction under 8 U.S.C. § 1503(a)

The Government argues that § 1503(a) bars Plaintiff's declaratory judgment action because his claim to citizenship "arose by reason of, or in connection with" his removal proceedings.  Plaintiff responds that his claim to citizenship arose prior to institution of the proceedings and is, therefore, not barred by the statute.  In his view, his claim to citizenship arose once he attained derivative citizenship, by operation of law, on the date of his father's naturalization in 1989.

In a recent opinion, the Supreme Court reaffirmed that the presumption favoring judicial review of administrative action may be dislodged by Congress.  The Court explained, in Kucana v. Holder, — S.Ct. —, 2010 WL 173368 (2010), that it has "consistently applied" a presumption favoring judicial review of administrative action "to legislation regarding immigration, and particularly to questions concerning the preservation of federal-court jurisdiction."  Id. at *11 (citation omitted).  Where a statute is "reasonably susceptible to divergent interpretation," the Court continued, an interpretation that "accords with [the] traditional understanding[ ] and basic principle[ ] that executive determinations generally are subject to judicial review" should be adopted.  Id. (citation omitted).  This presumption in favor of judicial review, however, can be dislodged by clear and convincing evidence.  Id. (citation omitted).  The question here, then, is whether 8 U.S.C. § 1503(a) is reasonably susceptible to divergent interpretation.  For the reasons that follow, I hold that § 1503(a) is not reasonably susceptible to divergent interpretation and, therefore, this court lacks jurisdiction to hear Plaintiff's claim.

Judicial review of claims of derivative citizenship may be accomplished in one of two ways—by appealing an order of removal issued by an Immigration Judge to the Court of Appeals, or by challenging, in district court, the final administrative denial of a right or privilege upon the ground that one is not a citizen.  See 8 U.S.C. § 1252(b)(5); 8 U.S.C. § 1503(a). See also Rios-Valenzuela v. Dept. of Homeland Sec., 506 F.3d 393, 396-97 (5th Cir. 2007); Patino v. Chertoff, 595 F.Supp.2d 310, 313 (S.D.N.Y. 2009).  Plaintiff could not proceed by the first method because he prevailed in his removal action.[10]  Thus, he was limited to challenging the denial of his Certificate of Citizenship application.  Judicial review of a denial of a Certificate must be framed as a declaratory judgment action.  See 8 U.S.C. § 1503(a); Perkins v. Elg, 307 U.S. 325 (1939).  See generally Austin T. Fragomen, IMMIGRATION FUNDAMENTALS § 8.1 (1996) (describing the difference between appeals of Board of Immigration Appeals' decisions and AAU decisions).  Such an action is a de novo proceeding.  See Delmore v. Brownell, 236 F.2d 598, 601 n.1 (3d Cir. 1956).

Not all Certificate denials, however, are subject to judicial review.  The court's authority to review claims challenging denials is proscribed by 8 U.S.C. § 1503(a), which provides that no action may lie:

> if the issue of such person's status as a national of the United States (1) *arose by reason of, or in connection with any removal proceeding* under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding.

---

[10]      Only "unfavorable decisions on applications, petitions, and other types of cases may be appealed."  8 C.F.R. § 103.3.

Id. (emphasis added).[11]  In short, where the issue of a plaintiff's nationality "arose by reason of, or in connection with any removal proceeding," an action seeking judicial review of the denial of a Certificate is barred.

The Government cites cases that interpret "arose by reason of, or in connection with any removal proceeding" to bar actions where the plaintiff asserted his nationality as a defense to a removal proceeding.  See Rios, 506 F.3d at 398-99.  See also Said v. Eddy, 87 F.Supp.2d 937, 941 (D. Alaska 2000) ("The exception applies to claims of nationality raised in removal proceedings.").  According to these courts, Congress' use of the past-tense term "arose" suggests that § 1503(a)(1) refers to proceedings that have already concluded.  This is especially true, these decisions reason, when § 1503(a)(1) is read in conjunction with § 1503(a)(2), which prohibits review where the plaintiff's nationality "is in issue in [a] removal proceeding."  If Congress intended to limit § 1503(a) to current proceedings, it would not have used two different tenses, in distinct subsections, describing nationality issues that arose versus those where nationality is in issue.  Under this rationale, Plaintiff is precluded from seeking a

---

[11]     Section 1503(a), in toto, provides:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action . . . for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any removal proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such removal proceeding.

declaratory judgment under § 1503 because he admits that he raised his nationality as a defense to his removal proceedings.

It is important to note at this juncture some factual dissimilarities between the disposition of Plaintiff's removal proceeding and one of the key cases cited by the Government. In Said v. Eddy, the plaintiff's removal proceedings were terminated by stipulation between her and the Immigration and Naturalization Service ("INS"). 87 F.Supp.2d at 939. The stipulation followed a "tentative finding" by the IJ that she was not a citizen and, therefore, was subject to deportation. Pending the IJ's final determination, she and the INS agreed that the INS would withhold removal pursuant to § 8 U.S.C. § 1231(b)(3) and that she would take no appeal. Id. Neither party reopened the proceeding and the IJ never issued a final decision. Id.

Since the removal proceeding in Said was not resolved in that plaintiff's favor, Said is distinguishable on its facts. Moreover, the plaintiff there did not apply for a Certificate of Citizenship, but simply brought the declaratory judgment action pursuant to § 1503 without having suffered an administrative denial of a citizenship claim. This difference actually renders Said's analysis of "arose" *dicta*.[12]

The facts in Rios-Valenzuela are more akin to Plaintiff's circumstance.  In Rios-Valenzuela, the removal proceeding against the plaintiff was terminated without prejudice by

_____

[12] Said's statutory interpretation discussion of the "arose" phrase is *dicta* because the plaintiff in that case suffered no administrative denial of a citizenship claim and the court noted, nonetheless, that "*[e]ven if there had been a denial of plaintiff's claim of U.S. citizenship*, subsection 1503(a) precludes a declaratory judgment action in this case at this time." 87 F.Supp.2d at 940 (emphasis added).

the IJ while the plaintiff's N-600 Certificate of Citizenship application was pending.[13]  Like the IJ in Plaintiff's proceeding here, the IJ there accepted the plaintiff's evidence of his citizenship. 506 F.3d at 396.[14]  The IJ's favorable determination was not appealed, and the plaintiff filed suit under § 1503 for declaratory judgment.

The Court in Rios-Valenzuela concluded that § 1503(a) bars actions where the plaintiff did not apply for his Certificate until after removal proceedings commenced because such an application was sought "in connection with" the removal proceedings.   Relying on the reasoning of Rios-Valenzuela, a district court, in this circuit, has stated, "if the assertion of . . . citizenship occurred in response to the commencement of a removal proceeding, then there is a presumption that the declaration 'arose by reason of, or in connection with' that proceeding." Madar v. U.S. Citiz. and Immig. Svcs., 2008 WL 5111920, *5 (W.D. Pa. 2008) (citing Rios-Valenzuela, 506 F.3d at 398).

To the extent that these courts rely on Said's analysis of the "arose" phrase, I question whether the Said Court's analysis attends to its facts.   As noted, Said did not involve a challenge to a denial of a Certificate of Citizenship or similar application.  The plaintiffs in both Rios-Valenzuela and Madar, by contrast, were denied Certificates.  See Rios-Valenzuela, 506 F.3d at 397; Madar, 2008 WL 5111920 at *1.  When the Said Court concludes that the plaintiff's

---

[13]      Here, the record does not indicate whether Plaintiff's removal proceedings were terminated with or without prejudice.

[14]      To be clear, a second removal proceeding was subsequently instituted against that plaintiff.  The Rios-Valenzuela Court held that the second proceeding could not form the basis for rejecting his declaratory judgment action.  In reaching that conclusion, the court analyzed § 1503(a)(2) which is not at issue in this case.  See id. at 397-98.

nationality claim "arose by reason of, or in connection with" her removal proceedings, it literally did.  That plaintiff suffered no other denial of a citizenship right.  Hence, <u>Said</u> concluded that her "case falls squarely within" the statutory bar.  <u>Said</u>, 87 F.Supp.2d at 941; <u>id.</u> at 943 ("[P]laintiff's only present basis for a declaratory action is the terminated removal proceeding, for which reason her present claim of U.S. nationality arises 'by reason of, or in connection with [a] removal proceeding[.]").  Indeed, the <u>Said</u> Court acknowledged that "if plaintiff is at some future time denied a right or privilege of a United States national . . . she will be entitled to bring an action as authorized by Section 1503; and the interposition of such other federal action will take plaintiff's case out of [§ 1503(a)(1)]."

Where, as in <u>Rios-Valenzuela</u>, <u>Madar</u>, and here, the plaintiff's challenge is to the denial of a Certificate of Citizenship application, a more intricate analysis is required to determine if the citizenship claim is barred by § 1503(a).  <u>Rios-Valenzuela</u> recognizes this, noting that "it is the context of how the particular issue of citizenship arose" that must be considered.  506 F.3d at 398.  Thus, "the exception focuses on the proceeding in which the particular claim to citizenship originates."  <u>Id.</u>

I agree with <u>Rios-Valenzuela</u>'s reasoning, and find it consistent with the plain meaning of the statute's terms.  Section 1503 provides that "[i]f any person . . . claims a right or privilege as a  national . . . and is denied such right . . . upon the ground that he is not a national . . ., such person may institute an action . . . declaring him to be a national."  8 U.S.C. § 1503(a).  The parties do not dispute that denial of a certificate of citizenship is such a denial.  The exception to the statute provides that "no such action may be instituted . . . if the issue of such person's

status as a national of the United States [ ] arose by reason of, or in connection with any removal proceeding ...."  Id.  The "issue of such person's status as a national" refers back to the basis for the citizenship claim.  Here, then, Plaintiff's declaratory judgment challenge may not be brought if his challenge to the Certificate denial arose by reason of, or in connection with, his removal proceeding.

"Arose" modifies both "by reason of" and "in connection with," such that the statute would bar claims where the nationality dispute "arose by reason of" a removal proceeding or "arose in connection with" a removal proceeding.  Where there is no statutory definition of a term, it should be interpreted "using the term['s] meaning in ordinary usage."  United States v. Loney, 219 F.3d 281, 284 (3d Cir. 2000).  Cf. Kucana, supra at *7 (discussing the various dictionary definitions of "under").  "By reason of" simply means "because of."  See Olmstead v. L.C. ex rel. Zimring, 527 U.S. 581, 626 (1999) (Thomas, J., dissenting) (quoting AMER. HERITAGE DICT. 1506 (3d ed. 1992); Caterpillar, Inc. v. International Union, et al., 107 F.3d 1052, 1068-69 (3d Cir. 1997) (Alito, J., dissenting) (quoting RANDOM HOUSE DICT. OF THE ENGLISH LANG. 1197 (1967 ed.)).  "In connection with," by contrast, denotes "a wide range of relationships."  Loney, 219 F.3d at 284.  It is a phrase known for its "vagueness and pliability."  Id. (quoting FOWLER'S MODERN ENGLISH USAGE 172 (R.W. Birchfield ed., 3d ed. 1996).  But since both of these phrases are modified by "arose," it is the definition of "arose" that directs the meaning of these terms.

To arise is defined as "to come into being," "to come about," "to become apparent in a such a way to demand attention."  See TRW Inc. v. Andrews, 534 U.S. 19, 32 (2001) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 117 (1966)).  "To become apparent in such a

way to demand attention" literally describes the origin of Plaintiff's Certification of Citizenship application.  While Plaintiff was free to apply for a Certificate at any time, he did not apply until removal proceedings were instituted against him.  He asserts that he did not realize he had a right to citizenship until that time, suggesting that the need for his application (and his ensuing challenge) did not become "apparent in such a way to demand attention" until removal proceedings were instituted.  To the degree his need to apply did not arise until that point, Plaintiff's application "arose in connection with" his removal proceedings, especially given the wide range of relationships "in connection with" denotes.

This interpretation and rationale is in accord with the reasoning of Patino v. Chertoff, supra.  In that case, a plaintiff who had been threatened with deportation pending his release from prison filed his Certificate of Citizenship application in anticipation of the impending removal proceedings.  That plaintiff asserted in his Complaint that his application was filed for the purpose of affecting his removal proceedings.  He, even, sought to enjoin the removal proceedings pending resolution of his citizenship claim.  Id.  Thus, the Patino Court held that the plaintiff's claim "arose in connection with [his] removal proceedings."  595 F.Supp.2d at 314.  Like the Plaintiff here, it was the threat of removal that brought the Patino Plaintiff's citizenship claim to his attention and served as the catalyst for his citizenship application.

Plaintiff seeks to avoid the effect of the Patino and Rios-Valenzuela courts' interpretations by arguing here that his claim to U.S. citizenship originated from his father's naturalization in 1989.  See Pl. Opp. at 3.  That event crystallized his derivative citizenship by operation of law, he contends.  This argument fails to acknowledge, however, Plaintiff's own

allegation that he did not become aware of his purported U.S. citizenship until he was faced with removal proceedings. It was the threat of removal that crystallized his assertion of citizenship. His Certificate of Citizenship application was filed, at least in part, in an attempt to forestall removal. Thus, like the Plaintiff in Patino, Plaintiff's facts fall squarely within the statute's plain language.

Moreover, the structure of the statutory framework surrounding § 1503 supports this interpretation. Section 1503 is just one of the statutes addressing adjudication of citizenship claims of those charged with removal. In 8 U.S.C. § 1252(b)(5), Congress provided that alleged aliens found subject to deportation by an Immigration Judge and the BIA may appeal to the Court of Appeals for a determination of their citizenship. Section 1503, by contrast, provides for judicial review of those who have not been made subject to removal proceedings.

Given the clear definition of "arose" taken together with the expansive definition of "in connection with", I see no other plausible reading of the statute's plain language. This reading is further supported by the statutory framework addressing citizenship claims. Thus, in light of the unmistakable language of § 1503, I find the presumption in favor of judicial review reaffirmed in Kucana, supra, inapplicable here.

Even were the language of the statute not plain, the legislative history of section 1503(a) would further support the interpretation adopted by this Court. In 1939, the Supreme Court held that a suit brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, was the proper vehicle for a party to seek judicial determination of her citizenship status. See Perkins v. Elg, 307 U.S. 325, 327 (1939). That next year, Congress codified Perkins by enacting 8 U.S.C. § 903,

which explicitly authorized suits seeking a declaration of United States citizenship.[15]  See Ly Shew v. Acheson, 110 F.Supp. 50, 54 (N.D. Cal. 1953) overruled on other grounds by Ly Shew v. Dulles, 219 F.2d 413 (9th Cir. 1954).  See also Rusk v. Cort, 369 U.S. 367, 375-76 (1962) overruled on other grounds by Califano v. Sanders, 430 U.S. 99 (1977).[16]

Many suits were filed, under § 903, by persons denied entry at the U.S. border including Chinese-born plaintiffs.  See 8 Immig. Law & Proc. § 104.12[2][a].  These plaintiffs claimed to be children of Chinese-American men who were unable to procure wives in the U.S..  See Ly Shew v. Acheson, 110 F.Supp. at 54.  Consequently, these men "made periodic visits to China and begot offspring."  Id.  These sort of derivative citizenship claims were difficult for courts to adjudicate without the benefit of a prior administrative immigration determination and in light of the inherent difficulty in disproving a party's claim of American parentage.  See Rusk, 369

---

[15]     8 U.S.C.A. 903 provided that

> If any person who claims a right or privilege as a national of the United States is denied such right or privilege by any Department or agency, or executive official thereof, upon the ground that he is not a national of the United States, such person, regardless of whether he is within the United States or abroad, may institute an action . . . for a judgment declaring him to be a national of the United States.

Ly Shew v. Dulles, 219 F.2d at 414.

[16]     Rusk held that a person not seeking entry into the United States via the Certificate of Identity mechanism in § 1503(b) and (c) could bring a declaratory judgment action under the Administrative Procedure Act, 5 U.S.C. § 1009 ("APA").  Rusk was overruled years later, after the APA was amended to make clear that it should not be interpreted in that manner.  See Califano v. Sanders, 430 U.S. 99, 105 (1977) ("[A]n Act of Congress enacted since our grant of certiorari in this case now persuades us that the better view is that the APA is not to be interpreted as an implied grant of subject-matter jurisdiction to review agency actions.").

U.S. at 390 (Harlan, J., dissenting).  The federal docket became clogged with these cases.  See id.; Ly Shew v. Acheson, 110 F.Supp. at 54.

Congress responded to these developments in 1952 by repealing § 903 and enacting 8 U.S.C. § 1503(a) in its stead.  See Ly Shew v. Dulles, 219 F.2d at 414 n.6.  The new statute limited the declaratory judgment remedy to persons already within the United States, and to those whose claim did not arise out of an exclusion proceeding.  See 8 U.S.C. § 1503(a) (1952 ed.).[17]  "The legislative history of [§ 1503] shows that the predominate concern of Congress was to limit the easy-entry provision of [§ 903], under which [ ] abuses had occurred.  Thus the report of the Senate Committee which studied immigration and nationality problems for two and a half years found that [§ 903] has been used, in a considerable number of cases, to gain entry into the United States where no such right existed."  Id. at 793 (internal quotation marks and citations omitted).  See also 8 Immig. Law & Proc. § 104.12[2][a] ("This legislative change

---

[17]        If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28 . . . for a judgment declaring him to be a national of the United States, except that no such action may be instituted in any case if the issue of such person's status as a national of the United States (1) arose by reason of, or in connection with any exclusion proceeding under the provisions of this chapter or any other act, or (2) is in issue in any such exclusion proceeding.

19

emanated from a belief that the declaratory judgment device was being abused in order to obtain improper entry into the United States.").

The Senate Judiciary Committee's Report on the bill ultimately enacted as § 1503(a) further clarifies Congress' intent.  The Report notes that

> [t]he reason for the modification is that *the issue of citizenship is always germane in an exclusion and deportation proceeding, in which case an adjudication of nationality status can be appropriately made.*

Id (emphasis added).  Congress went on to separately provide for judicial review of citizenship claims in the context of final deportation orders.[18]

Lastly, in 1996, "removal" proceeding was substituted for "exclusion" proceeding as part of an omnibus revision of the immigration laws.  See Pub. L. 104-208, 110 Stat 3009 (1996). As explained by the Supreme Court in Jama v. Immigration and Customs Enforcement, 543 U.S. 335 (2005), "[r]emoval is a new procedure created in 1996 through the fusion of two previously distinct expulsion proceedings, 'deportation' and 'exclusion.'   Id. at 349 (internal quotation marks and citations omitted).  See also Tineo v. Ashcroft, 350 F.3d 382, 383 n.3 (3d Cir. 2003). The Court further elucidated: "expelling an alien who had already entered required a

---

[18]      In this regard, Congress enacted 8 U.S.C. § 1105a in 1961.  See Williams v. Kennedy, 209 F.Supp. 282, 285 (D.N.J. 1962).  Section 1005a provided that "an alien seek[ing] judicial review of an order of deportation . . . may invoke the jurisdiction of the Circuit Court" and "in the event the petitioner claims to be a national of the United States, and makes a showing that his claim is not frivolous" he shall be entitled to "a hearing de novo."  Id. at 284.  Section 1105a was later replaced by a 8 U.S.C. § 1252(b)(5), which further provides that where "the court of appeals finds that a genuine issue of material fact about the petitioner's nationality is presented . . . the court shall transfer the proceeding to the district court . . . for a new hearing on the nationality claim and a decision on that claim *as if an action had been brought [as a declaratory judgment action] in the district court under section 2201 of Title 28."*  8 U.S.C. § 1252(b)(5) (emphasis added).

20

deportation proceeding, whereas expelling an alien still seeking admission could be achieved through the more summary exclusion proceeding." Jama, 545 U.S. at 349. Thus, the amendment to § 1503(a) had the effect of clarifying that all removal proceedings are covered by the statute's ban. This amendment was consistent with the broader purpose of the 1996 reformulation of the immigration laws, which was to "expedite removal of aliens lacking a legal basis to remain in the United States," by proscribing judicial review of certain administrative decisions. Kucana, supra at *10.

As a whole, this legislative history makes clear that Congress viewed the § 1503(a) exception as protecting the exclusion and deportation (now removal) process from abuse. It, further, makes clear that Congress intended that legitimate claimants to U.S. citizenship obtain review of their citizenship claims by appealing any unfavorable deportation ruling to the Court of Appeals. For those claimants who obtained a favorable ruling from an IJ, terminating their removal proceedings, there is no statutory provision for judicial review of their citizenship claim that arose in connection with the removal proceeding. This makes sense as such claimants are not in danger of removal.

In this connection, the Government notes that § 1503(a)'s ban does not fully foreclose judicial review of a denied Certificate of Citizenship. According to the Government, Plaintiff need only reapply for a Certificate and challenge any subsequent denial at a later date. Plaintiff counters that requiring re-application would create a "never-ending administrative nightmare[, impeding] foreign-born individuals from fully documenting their status here in the United States." Pl. Opp. at 7. And, Plaintiff continues, "the genesis of [Plaintiff's] realization will

21

*always* be the removal proceedings" under the Government's interpretation of § 1503.   Id. at 6 (emphasis added).

As noted above, DHS regulations provide, with regard to reapplying for a Certificate of Citizenship, that

> [a]fter an application for a Certificate of Citizenship has been denied and the appeal time has run, *a second application submitted by the same individual shall be rejected* and the applicant instructed to submit a motion for reopening or reconsideration in accordance with 8 CFR 103.5.

8 C.F.R. § 341.6 (emphasis added).  In light of this regulation, I question whether Plaintiff could simply re-apply for another Certificate of Citizenship and appeal that denial, as opposed to moving to reopen or for reconsideration of the denial.  In any event, case law suggests that Plaintiff could potentially challenge a denied passport application or some other agency action at a future date in order to obtain judicial determination of his citizenship.  Cf. Whitehead v. Haig, 794 F.2d 115, 119 (3d Cir. 1986) (citing Chin Chuck Ming v. Dulles, 225 F.2d 849, 853 (9th Cir. 1955)).[19]  Such an application is, of course, not before this Court at this time.

---

[19]      In Whitehead v. Haig, the Third Circuit held that a claim may be brought under § 1503 for denial of a passport application even if the issue of the claimant's citizenship arose years previously in a different context. The Plaintiff in Whitehead was born in the United States but later renounced his U.S. citizenship at the United States Embassy in Tokyo in 1965. Id. at 116-17.  He was convicted of various crimes from 1973 through 1976. Id. at 117.  Upon release from prison, he applied for a passport application and his application was denied in 1980.  He, then, filed a complaint under section 1503 challenging the denial.  The government, in that case, argued that his claim was barred by § 1503's five-year limitations period.

Agreeing with the government, the district court held that the complaint was barred because "[t]he denial of plaintiff's passport application in 1980 necessarily resulted from the fact that he had lost his citizenship in 1965 and does not revive the right to bring the action under [section 1503]."  Id.  The Third Circuit overturned the district court, holding instead that the

22

III.     CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction is GRANTED.


Dated: February 16, 2010                                   /s/ Freda L. Wolfson
                                                           Freda L. Wolfson, U.S.D.J.

---

passport application denial was to be considered apart from the 1965 renunciation.  Id. at 119-20. While Whitehead did not involve a prior removal proceeding, it nonetheless suggests that subsequent passport applications are viewed as separate and distinct from earlier citizenship determinations.